UNITED STATES DISTRICT COURT,
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

| | |
|---|---|
| RANDY BLANCHARD, <br>     Plaintiff <br><br> v. <br><br> P.O. MATTHEW C. SWAINE, <br> SGT. GEORGE BRUWER, <br> CITY OF LEOMINSTER, <br> CHIEF OF POLICE PETER F. RODDY, <br> And DOES 1-5 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTION

1. This is an action for money damages for violations of the plaintiff's constitutional rights. Plaintiff alleges that defendants caused him to be severely injured.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. sec. 1981, 1983, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. 1331 and 1343 and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising under state law.

### PARTIES

3. Plaintiff Randy Blanchard is and was at all material times herein a citizen of the United States and a resident of Suffolk and Worcester, Massachusetts.

4. Defendant Mathew Swaine ("Swaine"), a citizen of the United States and a police officer of Leominster, MA was acting under color of the laws of Massachusetts and was he was an agent, servant, or employee of defendant City of Leominster.

5. Sgt. George Bruwer ("Bruwer"), a citizen of the United States and a police officer of Leominster, MA was acting under color of the laws of Massachusetts and was he was an agent, servant, or employee of defendant City of Leominster responsible for supervising P.O. Swaine.

6. Defendant City of Leominster is a duly organized municipal corporation under the laws of the Commonwealth of Massachusetts and at all times relevant hereto, employed Matthew Swaine as a police officer.

7. Doe defendants were at all times mentioned herein duly appointed and acting officers of the police department of the City of Leominster.

## FACTS

8. At all times mentioned herein Mathew Swaine was acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usage of the Commonwealth of Massachusetts.

9. On June 29, 2005, Officer Swaine was dispatched to the vicinity of Fallon Clinic for a reported shoplifter being chased by Sears loss prevention.

10. Officer Swaine admits in his police report that Blanchard was 80 yards away from his car when Swaine first saw him. Exhibit 1.

11. On June 29, 2005, Officer Swaine swerved his vehicle and struck Randy Blanchard.

12. Swaine knew that striking a person with a police cruiser could cause serious bodily injury.

13. Patrolman Swaine had ample opportunity to avoid striking Mr. Blanchard.

14. Swaine admits he first saw Mr. Blanchard through the windshield when he was eighty yards away.

15. Swaine struck Mr. Blanchard deliberately.

16. Swaine drove his cruiser into Blanchard to stop him from fleeing.

17. After driving his vehicle into Blanchard, Swaine put his foot on Mr. Blanchard's chest, pushing him to the ground.

18. Post-impact, Patrolman Swaine said, "I'm sorry. I didn't want to hit you that hard."

19. Mr. Blanchard tried to push Swaine's foot to the side in order to sit up, and he told Swaine that his injuries did not allow him to lie flat on the ground.

20. Blanchard was seriously injured as a result of Swaine's disproportionate use of force.

21. Swaine did not acquiesce to Blanchard's pleas, and used his foot to hold Blanchard on the ground.

22. Swaine was deliberately indifferent to the injuries and medical needs of Mr. Blanchard.

23. Swaine filed a false police report about the incident

24. Swaine attempted to conceal his unlawful conduct.

25. Swaine stated in a report that he was unable to avoid hitting Blanchard.

26. According to Swaine's report, after striking Blanchard with his cruiser, he called for an ambulance and called for Street Supervisor Sgt. Bruwer. Exhibit 1.

27. Swaine did not prepare a report indicating that he used force.

28. Swaine did not prepare an injured prisoner report.

29. On information and belief Sgt. Bruwer would have been the officer responsible for reviewing Swaine's police report, describing the collision with Blanchard.

30. According to records, street supervisor Sgt. Bruwer performed no investigation of the incident involving Swaine.

31. According to records, the Leominster Police Department performed no investigation of the incident involving Swaine and no request for a criminal investigation or an administrative investigation was issued by Chief Roddy or Mayor Dean Mazzarella.

32. Mr. Blanchard suffered fracture-dislocation left shoulder, fracture right femoral neck and needed hip replacement surgery, and had to undergo left shoulder hemiarthroplasty.

33. The impact with Swaine's cruiser severely injured Blanchard's person, resulting in fractures to Blanchard's left humerus and right femur. Photos attached as Exhibit 2.

34. Mr. Blanchard underwent surgery by Thomas Goss, MD in an attempt to repair a 4 part proximal left humeral fracture at U Mass Memorial Medical Center on or about July 12, 2005.

35. As a result of his horrific injuries, Mr. Blanchard will forever walk with a limp and continue to suffer pain in his ruined knee.

36. Mr. Blanchard had to undergo months of therapy at a nursing home known as Lemuel Shattuck Hospital.

37. Swaine's use of his vehicle as a weapon to stop Blanchard was wholly out of proportion to what was appropriate under the circumstances.

38. Swaine's use of a vehicle to collide with a suspect on foot constituted deadly force.

39. The manner in which Swaine used his automobile was criminal.

40. This was a critical police incident because of Swaine's deliberate and criminal conduct, and because of Blanchard's serious injuries.

41. Mr. Blanchard underwent total hip replacement in November 2006 with Dr. Vrahas at Mass General Hospital.

42. Mr. Blanchard's medical bills exceed $150,000.

43. By the actions described above, Officer Matthew Swaine deprived the plaintiff of the following clearly established and well-settled constitutional rights:

    a. Freedom from the use of excessive and unreasonable force;
    b. Freedom from the deprivation of liberty without due process of law;
    c. Freedom from summary punishment; and
    d. Access to medical care if ill or injured.

44. Defendant Swaine unjustifiably subjected the plaintiff to these deprivations of his rights either maliciously, or by acting with a reckless disregard for whether plaintiff's rights would be violated.

45. Plaintiff submitted a Freedom of Information Act Request to Leominster Police Chief Peter Roddy, asking for photos or letters or investigations conducted into the June 29, 2005 incident. Exhibit 3.

46. In response to plaintiff's Freedom of Information Act Request, Leominster responded that many of the requests were "Not applicable". Exhibit 4.

47. The following requested documents were deemed "Not applicable" by Leominster's Police Department:

    - any documents pertaining to investigation conducted into the incident by the Leominster Police Department's Internal Affairs Division (IAD) or by any department personnel

    - any letters or other written notices from IAD or from supervisory personnel to police officers that came into contact with Randy Blanchard;

    - any response to such letters or notice from the officers addressed;

    - any conclusions reach in this matter by IAD or other investigator;

    - any letters of discipline, suspension, or disciplinary adction to officers Swain, who came into contact with Randy Blanchard

    - any interviews with any Leominster Police Department officers relative to any investigation conducted into this incident;

48. The lack of investigatory materials indicates there was no internal affairs investigation of this critical incident involving Officer Swaine.

49. Swaine has another civil action pending against him in federal court for excessive force entitled *Colleton v. Swaine* et al., Civil Action No. 07-40004 FDS.

50. In *Colleton* plaintiff Tim Colleton alleges, consistent with a surveillance videotape, that Swaine unjustifiably thrust Mr. Colleton's head into a door jam as he was exiting Chopsticks restaurant in Leominster, MA.

51. Leominster failed to investigate the Blanchard incident in accordance with policies entitled "XII Reporting Use of Force" and "XIII Use of Force Reporting and Investigation: Non-Deadly Force"

52. Policies XII and XIII are attached to this Complaint as Exhibit 4. See pp. 400-19, 400-20 and 400-21 specifically requiring: 1) a separate use of force report by any officer who uses force sufficient to cause injury to a prisoner, and 2) requiring investigations by officers in charge of the police station and 3) requiring the Chief of Police or his designee to ensure a thorough investigation was conducted and review all reports.

53. Leominster and the Chief of Police and Leominster's policy makers have demonstrated an established policy and custom of not investigating critical incidents.

54. Leominster and the Chief of Police and Leominster's policy makers have demonstrated an established policy and custom of not properly training police officers on use of force.

55. Leominster and the Chief of Police and Leominster's policy makers have demonstrated an established policy and custom of not properly training police officers on deliberate indifference.

56. Leominster and the Chief of Police and Leominster's policy makers have demonstrated an established policy and custom of not investigating critical incidents as potential crimes.

57. This official policy of not investigating or disciplining Leominster Police officers was the moving force behind Officer Swaine's constitutional violation, and Officer Swaine and supervisor Sgt. Bruwer knew that this critical incident would not be investigated.

58. As a direct and proximate result of the acts/omissions of each of the defendants, the plaintiff has suffered severe and permanent injuries.

59. As a direct and proximate result of the acts/omissions of each of the defendants, the plaintiff was forced to endure great pain and mental suffering

60. As a direct and proximate result of the acts/omissions of each of the defendants, the plaintiff was forced to incur medical expenses exceeding $150,000.

61. On March 23, 2007, as required by Mass.Gen.Laws c.258, plaintiff submitted a notice and presentment demand (Exhibit 5) to all appropriate persons representing Leominster, outlining the extensive medical treatment that was required as a result of Matthew Swaine's unconstitutional conduct, and making monetary demand for settlement of all claims. Id.

62. On May 17, 2007, Maureen MacDonald of Massachusetts Interlocal Insurance Association responded to Plaintiff's c.258 demand with a single page denial of claim letter (Exhibit 6), prompting the instant civil rights lawsuit to recover for Mr. Blanchard's injuries.

## COUNT 1– MATTHEW SWAINE
## BATTERY WITH DEADLY FORCE – A CAR

63. Paragraphs 1- 62 are incorporated herein by reference.

64. Defendant Matthew Swaine battered the plaintiff with his police cruiser.

65. Swaine could have stopped his vehicle without driving into the body of plaintiff.

66. Swaine admits that when he first saw Mr. Blanchard he was 80 yards away. Exhibit 1.

67. Swaine's driving into Mr. Blanchard was intentional.

68. Swaine's driving into Mr. Blanchard was reckless.

69. Swaine's driving into Mr. Blanchard was criminal in nature.

70. Swaine's driving into Mr. Blanchard was an impermissible use of force.

71. As a result of being struck by Swaine's vehicle, plaintiff required total hip replacement surgery.

## COUNT 2 – P.O. SWAINE
## VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C., SEC. 1981, 1983, 1988

72. Paragraphs 1-71 are incorporated herein by reference.

73. Swaine's conduct was grossly disproportionate to whatever the plaintiff's acts may have been.

74. Swaine's conduct was calculated to cause injuries to the plaintiff.

75. Under the laws of the United States, in particular, the Fourth, Eighth and Fourteenth Amendments, Swaine's conduct was prohibited.

76. The battery on plaintiff amounted to an intentional infliction of emotional distress.

77. Swaine's conduct with his foot constituted deliberate indifference to Blanchard's medical needs.

78. Swaine's conduct was excessive.

79. Swaine's conduct of driving into Blanchard was unjustified.

80. Plaintiff's injuries were caused as a direct and proximate result of an unconstitutional policy and departmental custom of neglecting to investigate critical incidents and other incidents involving use of force.

81. Swaine acted under color of law as a police officer when he struck Blanchard with his car.

82. As a direct and proximate result of the above described unlawful and malicious acts of Swaine, plaintiff Randy Blanchard suffered physical and mental harm.

83. P.O. Swaine's conduct was a violation of Mr. Blanchard's rights under the laws and Constitution of the United States, in particular the Fourth, Fifth, Eighth and Fourteenth Amendments thereof and 42 U.S.C. 1981, 1983.

84. Swaine's conduct was intentional, malicious, wanton, and in reckless disregard of plaintiff's constitutional rights.

85. As a further result of the above described act, Swaine deprived the plaintiff of rights and immunities secured to him under the U.S. Constitution, the laws of the United States, including the right to be free from punishment without due process, and to equal protection of the law, as well as the laws of the Commonwealth.

## COUNT 3 - THE CITY OF LEOMINSTER
## CLAIMS UNDER G. L. C. 258

86. The plaintiff repeats and realleges paragraphs 1 through 85 and incorporates them herein as if fully set forth.

87. Plaintiff was injured as a direct and proximate result of the negligent conduct of employees of the City of Leominster:

    (a) Police officer Swaine recklessly injured plaintiff Randy Blanchard.

    (b) Police Chief Peter Roddy and Sgt. Bruwer were negligent in hiring, training, supervising, disciplining, and retaining police officers employed by the City, including Matthew Swaine.

88. On March 23, 2007 plaintiff through counsel, made a presentment to the City of Leominster as required by G. L. C.258, Section 4, and the claim was denied on May 17.

## COUNT 4 – CITY OF LEOMINSTER AND CHIEF PETER RODDY *MONELL* MUNICIPAL LIABILITY

89. Paragraphs 1-88 are incorporated herein by reference.

90. As a direct and proximate result of the reckless conduct of defendant P.O. Mathew Swaine, Mr. Blanchard suffered severe emotional trauma, humiliation, physical and psychological injuries.

91. The failure of the City of Leominster to enforce a minimally acceptable program of supervision and discipline created within the police department an atmosphere of lawlessness which led officers to believe they were above the law and would not be sanctioned for their acts of misconduct.

92. Leominster and its policy makers have a long established policy and custom of not investigating critical incidents, and this official policy was the moving force behind Officer Swaine's conduct and plaintiff's egregious injuries.

93. Leominster and its policy makers have a long established policy and custom of not adequately training officers on proper use of force and this official policy was the moving force behind Officer Swaine's conduct and the the terrible injuries Mr. Blanchard suffered.

## COUNT 5 – SGT. GEORGE BRUWER and LEOMINSTER NEGLIGENT SUPERVISION and *Monell*

94. Paragraphs 1-93 are incorporated herein by reference.

95. As a direct and proximate result of the reckless conduct of Sgt. George Bruwer, Mr. Blanchard has suffered severe emotional trauma, humiliation, physical and psychological injuries.

96. Sgt. Bruwer did not prevent P.O. Swaine from injuring Mr. Blanchard when he held Mr. Blanchard to the ground with his foot, and such failure by Sgt. Bruwer amounted to negligent supervision.

97. Leominster and its policy makers have a long established policy and custom of not investigating critical incidents, and this official policy was the moving force behind Sgt. Bruwer's conduct and plaintiff's injuries.

98. Leominster and its policy makers have a long established policy and custom of not adequately disciplining officers or adequately training officers on proper use of force, and this official policy was the moving force behind Sgt. Bruwer's failure to prevent Swaine's conduct, making worse the injuries Mr. Blanchard suffered.

## DEMANDS FOR RELIEF

The Plaintiff hereby respectfully requests the following relief:

1. All compensatory damages recoverable;
2. All punitive damages recoverable;
3. All attorney's fees, costs and expenses allowable; and
4. Any and all other relief as the Court deems just and proper

## PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT

Respectfully submitted,
Plaintiff RANDY BLANCHARD
By his attorneys,

*/s/ RB*

Hector E. Pineiro, Esquire, BBO # 555315
Robert H. Beadel, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600

Dated: 4/18/08